Case number 20-5081, American Wild Horse Campaign, Western Watersheds Project et al, appellants, versus Scott de la Vega in his official capacity as Acting Secretary of the Department of the Interior and Director, Bureau of Land Management. Ms. Lewis for the appellants, Mr. Bernie for the appellate. Good morning, Ms. Lewis. Good morning, Your Honor. You can proceed. May it please the Court, Elizabeth Lewis for the plaintiffs. Under Ohio Forestry, when an agency implements a land use plan in a way that imminently injures plaintiffs' interests, the entirety of that decision is subject to judicial review. Accordingly, in this case, when plaintiffs sought review of the decision to remove every single wild horse from the Caliente Complex that was made in a land use plan and implemented by a gather decision, they challenged— Ms. Lewis, you're up against a stature of limitations, and Ohio didn't have anything to do with a stature of limitations. It's all about rights. I apologize, Your Honor. Could you repeat your question? You're cutting out a little bit. Your problem here is a stature of limitations, and the Ohio case is all about rightness. Yes, Your Honor, it is, but— I don't know why you think it's relevant here. Well, one of the prongs of the rightness inquiry is whether delayed review would cause hardship to the plaintiffs. Let's assume your claim is right. What do you do about the stature of limitations? Well, we timely challenged—my clients timely challenged an implementing decision. You got review of that, of the 2018 decision. You got review on the merits in the district court. Yes, but under the Ohio forestry framework, my clients included challenges to the underlying land use plan in that challenge to the implementing decision, and without the ability— That was the 2008 plan. That's why you have a stature of limitations problem. We could not have challenged that plan in 2008. Well, you could have challenged it in 2009 when it ripened. That's when it ripened, and your problem is that, you know, as Judge Ginsburg said, Ohio and all the other cases you cite, none of them are statute of limitations cases. That is true, but again, when looking at the rightness inquiry, when you're looking at whether delayed review would cause hardship to the plaintiffs— How does hardship affect the statute of limitations? Are you making an equitable tolling argument? I didn't see it. No, no, Your Honor, we're not, but this court has held before that whether plaintiffs would be barred from bringing their challenges later, for example, due to a statute of limitations problem, then that is a hardship that the court should take into account. What case is that? Your Honor, that is Louisiana Environmental Action Network versus Browner. And that's a holding, not just a dictum? I don't think so. I'm sorry? Is that the holding or a dictum in that case? That is a dictum, but there are other cases where this court has made the same statement. And was that itself a statute of limitations case? It is a statute, yes. Yes, Your Honor. So it's a dictum in the statute of limitations case. Okay, go ahead. And in Bethlehem Steel Court versus the EPA, this court noted that whether there is sufficient hardship to the parties to warrant our review, the court should determine whether the challenge action will be reviewable in the future. If it will not be reviewable later, our review now may be warranted. So this court has observed that the inability to bring that claim later is a factor that weighs on whether a challenge is right. Is the Louisiana case cited in your briefs? I don't see it, but it might be. No, Your Honor, it is not. That might have been helpful. What is the citation? What's the citation for the case? It is 87 F 3rd, 1379. Thank you. You're welcome. Ms. Lewis, under your theory, would a challenge to a land use plan ever be time barred as long as the agency keeps engaging in successive implementing actions? Well, I think that that would ever be time barred, regardless of how long those go on, 10 years, 20 years. I think that that would depend on several factors, including your key to this case was that the agency bail-in tiered and incorporated by reference the 2008 management plan. And so that subsequent decision, implementing decision in 2018 relied on the 2008 RMP for its analytical and procedural foundation. And that is the statutory scheme. But that's my question then. So as long as the agency, so under your theory, the agency here could every few years initiate another gathering for years and years and years. And though each one of those would allow you to go back and challenge the 08 plan, right? Yes, your honor. And in fact, BLM has... What's the purpose of the statute of limitations? The statute of limitations. So first of all, the statute of limitations would apply to bar out of time challenges to the implementing decision. I think that everyone here agrees that plaintiffs could not come in and challenge the 2018 decision in 2030. That's no longer... It's outside the limitations period. It's no longer the operative decision. And there are additional bars to judicial review, including that a plaintiff must have standing. But I think that it is also important for the court to balance Congress's interest in providing repose with the statute of limitations with the APA's other goal, which is to ensure that agency action is reviewable. And that when a plaintiff is injured by the agency's action, that they are able to obtain meaningful judicial review of that decision. Ms. Lewis, your standing depends in part on the Cunningham Declaration. She describes her plan to go on a hike in August 2019. Do you know if she went on the hike? I do not, your honor. It also talks about her plans to write a book. Do you know if she wrote the book? I believe that she is still working on it. If it's important to the court, I'm happy to ask her and communicate that back. I mean, it may be that you have standing even if her plans were less definite than a plan to go on a hike in two weeks and a plan to write a book about the horses that she saw or a book about the area that would include photographs of the horses. You certainly, I think, are closer to standing and specific plans than the plaintiffs in Lujan. But, you know, it would make it an easier standing case if we could be certain, you know, if there were some subsequent evidence that her specific plans to go on the hike were actually specific plans and that the plan to write a book was an actual plan to write a book. But it may be that it doesn't matter. I know that her plans to write the book are actual plans. I think that everybody's This was an August 2019 hike, so it would have been six months before the pandemic. Again, this may not matter at all, but, you know, Lujan says you can't just say, well, I plan to go on a hike sometime in the future. You were more specific than that. You said two weeks, which is great in terms of establishing your standing. But, you know, if she ended up not going on the hike, maybe that casts some doubt on that. Well, even if she didn't go on that hike, she still frequently travels to the area. And as she said in her first declaration, she has concrete plans to return and to continue to work on her book. I think her standing will have to be measured by the date of the complaint. Okay. I think we have cases on that. Yes. I apologize. Excuse me. You're having trouble hearing me. I'm not sure why. Doug, your voice is, you are difficult to hear. I don't know what it is about whether you're, where you're sitting, but it's difficult to hear you. Well, I'll try to just speak loudly then. Is that helpful? Yes, that's okay. Thank you. Okay. Just to follow up on Judge Ginsburg's question, we assess standing at the time the complaint is filed. Do we also assess it at every stage of the proceeding or just at the time the complaint is filed? Well, you know, plaintiffs have their obligation to demonstrate standing increases with each successive stage of litigation. And we did, we put in declarations that demonstrate that our clients have a continuing interest in this area. And the district court ended up, you know, affirming that we did have standing and that our declarations were sufficient. That's all for me. Actually, I want to take a look at the Browner case. So Ms. Lewis, have you got, have you reserved time for rebuttal? Yes, your honor. One minute. I may ask you about that when you come back. Okay. Thank you. Thank you. Okay. Thank you, Ms. Lewis. We'll hear from the government and I'll give you a little extra time. Okay. Thank you. Good morning. May it please the court, Andrew Bernie on behalf of FLEs. Just to pick up on some of the questions that were just asked. I mean, there's no dispute that plaintiffs could have termination in 2009. They commented on both the 2008 management decision and the 2009 gather decision there they're standing. I think in 2009 was no different than it was in 2018. There's no, let me ask you, let me ask you about that. In a hypothetical case where a plaintiff did not have standing in 2009, let's say did not have standing from 2009 through 2015. Could that plaintiff now withstanding challenge the 2008 decision that became ripe in 2009? Judge Walker, if it was, if it was a situation where the plaintiff didn't have standing because the agency actually hadn't issued an implementing decision then perhaps, I think if it had been a case where the plaintiff simply, where the agency had implemented the decision and the plaintiff simply didn't exist from 2009 to 2015 or move to the area later, I think we would say it should still be brought earlier. But I don't think the court necessarily, I understand the question. I don't think the court needs to reach those issues here because there's no dispute that plaintiffs could have brought this challenge in 2009. They're very active in this space and they follow developments concerning it extremely closely. And if you look at the record, particularly pages 191 to 195 of the joint appendix, that's the comments on the 2009 gather decision. You'll see all the same, you know, comments from plaintiffs and from others raising all the same issues they raised here. You know, the idea that BLM is prioritizing cattle over horses and things like that. And BLM says over and over again, we're not, that, that is a decision that was made in the 2008 decision and it's not subject to, to reconsideration here. So at that point, it's very clear that this challenge needed to be brought and plaintiffs didn't bring that challenge then. And I think under basic principles of timeliness, the suit is now time barred. And Judge Ginsburg, you're, you're exactly right. Ohio forestry is, is not a case about timeliness. It's a case about ripeness. The case doesn't even mention timeliness. I mean, Ohio forestry stands for the proposition that certain decisions in a resource management plan cannot be challenged from the moment of issuance. But that is, and the APA provides a very generous six-year statute of limitations where claims can be brought once they become right. But that's just worlds apart from, from the idea that any decision, even years or decades after a decision made in an underlying land use plan could be subject to challenge. And Judge Tatel, just to pick up on your question, we do think that plaintiff's position, that the implications of that are quite striking. For implementing a decision to set an AML of zero is a time-consuming process that oftentimes requires persistence on the part of the agency. I mean, this is true for several reasons. First of all, keep in mind that the area at issue here is a very large area. It's over 900,000 acres. So no matter how well planned a single gather is, it's very difficult, if not difficult, to get a decision to set an AML of zero. And so we do think that the implications of this decision, and Judge Tatel notes in her opinion, obviously don't respect that the decisions made in land use plans, they could come in from other areas. And perhaps most importantly, they reproduced quickly. So if you look at the record in this case, after the 2009 decision, they were estimated to be only a few dozen horses. And then by the time of the next census, before the 2018 gather decision, there were 1,744 horses estimated. So we do think the implications of plaintiff's position are that decisions in a land use plan, as a practical matter, could almost never be final. And notwithstanding, you know, notwithstanding the interests of people who use and enjoy these lands, at some point finality has to kick in. And that's the policy embodied both by statutes of limitations generally, and 20 and section 2401 a in particular. So we think that the implications for that are quite striking. Mr. Bernie, are you familiar with the Louisiana case? I'm not your honor, I apologize. All right. Well, you weren't you weren't given notice. That's right. I'm sorry, I'm sorry, Your Honor. Well, you didn't get notice of it. So that's fine. Yeah, and understand that sometimes in researching for oral arguments, new new cases can don't don't fall play just for that. But no, I have not had a chance to review. Okay, thank you. Mr. Bernie, do you know if the 2018 roundup occurred? So I believe so Your Honor, that what the what the 2018 gather decision authorized was actually a series of gathers. I believe the I believe the first of those, I believe at least the first of those occurred, as I think the record says, the first of decisions was focused on removing horses from near near the highway where they're liable to be struck by cars and cause danger to to themselves and other people. BLM does occasionally BLM does occasionally approve emergency gathers that approved one. It improved one at the end of 2020, I think in the in the Del Mar herd area. But what it what it's what the 2018 gather decision approved is a series of gathers and those I don't think there's any I don't think there's any risk of this case becoming moot during the time the panel would consider this this case if that's what you're asking. The horses are still out some of the horses are still out there. Yes, I mean, there's, I think I believe the latest census was conducted. The latest census was conducted, I think later last year. And I think there's a wide range of estimates. But I horses still there. So I mean, it's an ongoing process and requires persistence. And the decision was made that the that the complex would not be managed for wild horses in 2008. So we believe this challenge did have to be brought within six years of the 2009 gather decision. There are no further I'm happy to address any further questions the court might have. Otherwise, I think anything that's okay. Thank you. Thank you. Miss Lewis, you had a little bit of time left, but you can take two minutes if you'd like. Your Honor, I would first like to point out that the rule that the government asked this court to adopt would require my clients to challenge a decision to remove all wild horses at a time the agency acknowledged that it would not actually remove all of those horses. My client... But the agency said in the original plan that the first gather might not result in the elimination of all the horses. And the OA plan said the ultimate objective was zero horses. So, you know, the OA gathering gave you an ability to challenge all of that. That ripened, and all that would have been on the table had you acted before the statute of limitations expired. Well, Your Honor, I, again, I, we did act within the statute of limitations to the 2018 decision and... Well, but that's not the question before us, right? I mean, that doesn't help you if... I mean, you can challenge the 2018. That's timeless. But as the district court said, not to the extent you're challenging the underlying OA plan. Well, Your Honor, I think... Oh, sorry. No, go ahead. My apologies. I think that the, there's a fundamental difference in the injury between the 2009 decision and the 2018 decision. The injury that... Definitely. No question about it. But that doesn't affect the statute of limitations analysis. Well, I think that the statute of limitations, it's our position that under the framework that is set forth by Ohio Forestry, that this idea of repetitive litigation, multiple challenges to implementing land use plans, that that is the framework that Ohio Forestry and the Supreme Court set out. That brings us back to Judge Ginsburg's very first question to you this morning, which is that Ohio Forestry is not a statute of limitations case. As it turns out, neither is the Louisiana case. Can you hear me a little bit? Hear that? Yeah. Louisiana case is not a statute of limitations case. The conclusion is all about standing and ripeness. The only time the word limitation appears in the case is when the court quotes Baltimore Gas, and I think this must be what you had in mind, Ms. Lewis, saying that the court says, we have held in other cases involving the confrontation between the statutory bar and a claim not yet prudentially right, that a, quote, time limitation on petitions for judicial review can run only against challenges right for review. Well, if your case had not been right in 2009, you wouldn't be in this situation, but it was in 2009. You could have challenged then, your claim accrued then and was right then. So that's a dictum that relates to a situation not present in this case. And the conclusion to the case is because none of these petitioners have established both standing and ripeness, none has demonstrated that we can and should review at this time the merits of their claims. So that case is of no help to you. Well, your honor, respectfully, I think that the paragraph just above that the petitioner in that case was arguing that it would suffer a hardship because there was a rule under the Clean Air Act that required challenges to be brought within 60 days. And this court said, though, the ability of a petitioner to bring its claim at a later time would indeed pose a significant hardship. We don't believe that the petitioner in that case would be barred, would be so barred. Anything else, Doug? Sorry. Did you have anything else? No, thank you. Okay. Judge Walker, anything? Not for me. Thank you. Okay. Ms. Lewis, thank you. The case is submitted.
judges: Tatel, Walker, Ginsburg